FILED
01-30-2018
John Barrett
Clerk of Circuit Court
2018CV000832
Honorable Glenn H
Yamahiro-34
Branch 34

**STATE OF WISCONSIN**       **CIRCUIT COURT**       **MILWAUKEE COUNTY**

---

**THOMAS FOTUSKY**
716 Saint Johns Drive
Delafield, WI 53018

Individually and on behalf of a class of others similarly
situated,

     Plaintiff

     v.

**EBIX, INC.**
c/o Brian J Nelson
6400 Industrial Loop
Greendale , WI 53129-2452

and

**PROHEALTH CARE, INC.**
C T Corporation System
301 S. Bedford St. Suite 1
Madison , WI 53703

     Defendants.

Case No.:
Case Code:  30301

---

### CLASS ACTION COMPLAINT
### &
### REQUEST FOR JURY TRIAL

---

     Plaintiff Thomas Fotusky ("Fotusky" or "Plaintiff"), through his undersigned counsel files

this Class Action Complaint and Request for Jury Demand on his individual behalf and on behalf

a class of all similarly situated persons against Defendants and says in support:

# I. PARTIES

1. Plaintiff is an adult resident of the State of Wisconsin who resides at the address captioned above.

2. The Defendant, EBIX, INC., ("EBIX") is a Wisconsin corporation headquartered in and duly licensed to conduct business in the State of Wisconsin, in which is found its principle place of business and whose registered agent is captioned above.

3. The Defendant, PROHEALTH CARE, INC.. ("Pro Health") is a Wisconsin corporation headquartered at N17 24100 Riverwood Dr Ste 130 Waukesha , Wisconsin, in which city is found its principle place of business and whose registered agent for service of process is captioned above. That, upon information and belief, PROHEALTH is a "health care provider" pursuant to Wis. Stat. §146.81.

4. That, upon information and belief, ProHealth Care, Inc. is also the parent corporation for and/or acts as the agent or business associate for and decides the amounts to charge and assesses and collects the charges for requests for certified medical records for the following entities, hospital, clinics or medical providers ("ProHealth Care Entity"):

   a. ProHealth Waukesha Memorial Hospital
   b. ProHealth Oconomowoc Memorial Hospital
   c. ProHealth Rehabilitation Hospital of Wisconsin
   d. ProHealth Angels Grace Hospice
   e. ProHealth Behavioral Health Services
   f. ProHealth Brookfield Clinic – Calhoun Rd
   g. Prohealth Care Medical Associates
   h. ProHealth Care Moreland Surgery Center
   i. ProHealth Care UW Cancer Center
   j. ProHealth Delafield Clinic – Golf Rd.
   k. ProHealth Hartland Clinic – Walnut Ridge Dr.
   l. ProHealth Heart and Vascular Care
   m. ProHealth Lake Country Emergency Physicians
   n. ProHealth Moreland Surgery Center of Wisconsin
   o. ProHealth Mukwonago Clinic – Maple Ave.
   p. ProHealth Mukwonago Emergency Department

2

| | |
|---|---|
| q. | ProHealth Mukwonago Occupational Health Services |
| r. | ProHealth Muskego Clinic |
| s. | ProHealth New Berlin Clinic |
| t. | ProHealth New Berlin Occupational Health Services |
| u. | ProHealth Oconomowoc Clinic |
| v. | ProHealth Oconomowoc Occupation Health Services |
| w. | ProHealth Oconomowoc Physician Center |
| x. | Prohealth Oncologists |
| y. | ProHealth Pewaukee Clinic |
| z. | ProHealth Regency Senior Communities |
| aa. | ProHealth Sussex Clinic |
| bb. | ProHealth Watertown Clinic |
| cc. | ProHealth Watertown Occupational Health Services – Airpark Dr. |
| dd. | ProHealth Waukesha Clinic – Big Bend Rd. |
| ee. | ProHealth Waukesha Clinic – Moreland Blvd. |
| ff. | ProHealth Waukesha Occupational Health Services – Waterwown Rd Dr. |
| gg. | ProHealth Weight Management Services |

## II. BACKGROUND

5. The Citizens of Wisconsin have valid interests in obtaining copies of their medical records. They may want them to provide to their healthcare providers, for further evaluation, to pursue legal claims for injuries or simply to maintain the records out of personal concerns. Whatever the reason, the records must be made available for them to obtain.

6. While the citizens may want to obtain copies of their health records, the medical providers do not want to bear the expense of providing copies of the records to their patients.

7. The Wisconsin Legislature has addressed the respective wants and needs of both patients and the health care providers by enacting a statute, Wis. Stat. §146.83, that establishes the patient's rights to copies and sets the maximum compensation that the health care providers who provide the records may charge.

3

8. At this time, the production of copies of electronically stored information can be accomplished at minimal cost. The copy cost by a third party, such as Staples, starts at $.02 per page for black and white and up to $.11 per page for color copies.

9. The rates allowed by the Wisconsin law are substantially more than the costs of obtaining copies form third parties. Under Wis. Stat. §146.83, which states in pertinent part:

> (b) Except as provided in sub. (1f), a health care provider may charge no more than the total of all of the following that apply for providing the copies requested under par. (a):
>
> 1. For paper copies: $1 per page for the first 25 pages; 75 cents per page for pages 26 to 50; 50 cents per page for pages 51 to 100; and 30 cents per page for pages 101 and above.
>
> 2. For microfiche or microfilm copies, $1.50 per page.
>
> 3. For a print of an X-ray, $10 per image.
>
> 4. If the requester is not the patient or a person authorized by the patient, for certification of copies, a single $8 charge.
>
> 5. If the requester is not the patient or a person authorized by the patient, a single retrieval fee of $20 for all copies requested.
>
> 6. Actual shipping costs and any applicable taxes.

10. A patient or a "person authorized in writing by the patient" who pays the fee is entitled to copies at the statutory rate and the "health care provider" must provide them pursuant to that rate under Wis. Stat. §146.83(3f).

11. Medical records may be released without the patient's authorization under Wis. Stat. 146.82(2), and, in that event, the provider may charge a certification fee and a retrieval fee.

4

12. This action arises because the Defendants have attempted to enhance their profits that they can make off the already generous allowable legislative per copy charge by also routinely charging patients or persons authorized by the patient, a certification fee, a retrieval fee, processing, basic or other fees not authorized by the statute.

13. That on May 4, 2017, the Wisconsin Supreme Court issued a decision in <u>Moya v. Healthport Technologies</u>, et. al, 2017WI 45 (2017) holding that a health care provider and their medical records provider may not charge certification, basic, processing or retrieval fees for producing a patient's records if the records are requested by either the patient or any person authorized in writing by the patient. The person authorized in writing acts the agent for a known principal.

14. That a copy of the decision is attached hereto as ***Exhibit A***.

15. The Plaintiff, Thomas Fotusky, is one of many persons who the Defendants charged illegal fees contrary to Wis. Stat. §146.83.

16. The Plaintiff seeks to represent himself and the other persons who are similarly situated to him because the relatively low dollar amount of the illegal charges by the Defendants make it an appropriate situation for a case under Wis. Stat. Sec. §803.08 which provides:

> When the question before the court is one of a common or general interest of many persons or when the parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole.

17. Whether or not the Defendants charged in excess of the generous amounts allowed by Wisconsin law is a common or general interest to any person who has been charged by the Defendants or who may deal with the Defendants in the future.

5

18. Upon information and belief, the common or general interest question raised and causes of actions presented are of a common and general interest of many persons and those persons are very numerous and it would be impracticable to bring all such persons before the court.

19. Plaintiff should be permitted to proceed to sue for the benefit of the following classes:

**ProHealth Care Class**:

All persons in Wisconsin:

(i) who were patients at any ProHealth Care Entity who authorized another person in writing to obtain the patient's medical records; and

(ii) were charged a basic, retrieval and/or a certification fee and/or other unauthorized fee by Defendant ProHealth Care, Inc. through its agent Ebix, Inc., in violation of Wis. Stat. §146.83(3f)(b)(4) - (5) from July 1, 2011 through the date of trial; or

(iii) were charged a basic, retrieval and/or a certification fee by Defendant ProHealth Care, Inc. directly or indirectly through an agent *other than* Ebix., Inc. or Ciox Health, LLC in violation of Wis. Stat. §146.83(3f)(b)(4) - (5) since July 1, 2011 through the date of trial.

**Ebix, Inc. Class:**

All persons in Wisconsin who:

(i) were patients at a medical provider other than ProHealth Care, Inc. who authorized another person in writing to obtain the patient's medical records; and

6

(iii) were charged a basic, retrieval and/or a certification fee and/or other unauthorized fee by Ebix, Inc. in violation of Wis. Stat. §146.83(3f)(b)(4) - (5) since July 1, 2011 through the date of trial.

The Classes specifically excludes the following persons or entities: (i) Defendants, any predecessor, subsidiary, sister and/or merged companies, and all of the present or past directors, officers, employees, principals, shareholders and/or agents of the Defendants; (ii) any and all Federal, State, County and/or Local Governments, including, but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, councils and/or any other subdivision, and any claim that such governmental entities may have, directly or indirectly; (iii) any currently-sitting Wisconsin state court Judge or Justice, or any federal court Judge currently or previously sitting in Wisconsin, and the current spouse and all other persons within the third degree of consanguinity to such judge/justice or (iv) any law firm of record in these proceedings, including any attorney of record in these proceedings; and (v) anyone person who would otherwise belong to the class but who Defendants can identify as being  charged a fee, either directly or indirectly through a person authorized in writing, but said fee was not collected or paid to Defendants by anyone.

### III.  JURISDICTION & VENUE

20. This Court has jurisdiction over Defendants in that Defendants are physically located in Milwaukee County and conduct substantial business in Milwaukee County and are registered in this State to conduct business.  This transaction further arose in Milwaukee County.

7

21. Venue is also appropriate in this County because Defendants are based in Milwaukee County and conduct substantial business in Milwaukee County and has, upon information and belief, employees based in Milwaukee County.

## IV. FACTS

22. Thomas Fotusky tripped and fell and was injured on January 6, 2017.

23. Mr. Fotusky retained Welcenbach Law Offices as his attorneys who processed his personal injury claim.

24. Mr. Fotusky signed HIPAA releases authorizing the release of medical information to his attorneys.

25. Mr. Fotusky's attorneys sought certified medical records and billings from Defendant, ProHealth Care, Inc. and through Lake Country Emergency Physicians.

26. The Lake Country Emergency Physicians is, upon information and belief, a subsidiary of or affiliate corporation of ProHealth Care, Inc..

### A. Certified Medical Records Requests – EBIX, INC.

27. That on or about May 12, 2017, Mr. Fotusky's attorney wrote and requested certified medical bills from Lake Country Emergency Physicians and provided a written consent in the form of a HIPAA release signed by Mr. Fotusky.

28. That EBIX responded to the medical bill request on behalf of Lake Country Emergency Physicians and provided a one (1) page certified bill for Mr. Fotusky and charged on invoice number LCE79726 the sum of $32.06.

29. That Welcenbach Law Offices paid the $32.06 charge to EBIX on behalf of Mr. Fotusky to obtain his certified medical bills.

8

30. That PROHEALTH, as the parent corporation, agent or business agent of Lake Country Emergency Physicians, and EBIX charged a basic, retrieval and/or a certification fee and/or other unauthorized fee to Mr. Fotusky contrary to Wis. Stat. §146.83 to obtain his certified medical bills.

31. That Defendants have negligently or knowingly and willfully charged these fees contrary to statute.

**B. Certified Medical Billing Request - PROHEALTH**

32. On or about February 23, 2017, Mr. Fotusky's attorney wrote and requested certified medical bills from PROHEALTH for Oconomonow Clinic and Oconomonwoc Memorial Hospital and provided a written consent in the form of a HIPAA release signed by Mr. Fotusky.

33. PROHEALTH responded to the medical bill request on behalf of Oconomonow Clinic and Oconomonwoc Memorial Hospital and provided four (4) pages of certified medical bills for Mr. Fotusky and charged on invoice number 21786 the sum of $33.86 for the certified medical bills of Mr. Fotusky.

34. That Welcenbach Law Offices paid the $33.86 charge to PROHEALTH to obtain the certified medical records for Mr. Fotusky.

35. That on or about May 11, 2017, Mr. Fotusky's attorney wrote and requested certified medical bills from PROHEALTH for Oconomonow Clinic and Oconomonwoc Memorial Hospital and provided a written consent in the form of a HIPAA release signed by Mr. Fotusky.

36. That PROHEALTH responded to the medical bill request on behalf of Oconomonow Clinic and Oconomonwoc Memorial Hospital and provided three (3) pages of certified

9

medical bills for Mr. Fotusky and charged on invoice number 23017 the sum of $33.28 for the certified medical bills of Mr. Fotusky.

37. That Welcenbach Law Offices paid the $33.28 charge to PROHEALTH to obtain the certified medical records for Mr. Fotusky.

38. That PROHEALTH charged a basic, retrieval and/or a certification fee and/or other unauthorized fee to Mr. Fotusky contrary to Wis. Stat. §146.83 to obtain his certified medical records.

39. That PROHEALTH has negligently or knowingly and willfully charged these fees contrary to statute.

## VIOLATION OF WIS. STAT. §146.83
## ON BEHALF OF PLAINTIFF AND CLASS MEMBERS

40. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

41. That Mr. Fotusky ultimately settled his personal injury case and reimbursed Welcenbach Law Offices for all charges incurred from Defendants.

42. In Wisconsin, access to patient health care records is governed by Wis. Stat. § 146.83.

   Wis. Stat. §146.83(3f)(a) provides in pertinent part:

> Except as provided in sub. (1f) or s. 51.30 or 146.82 (2), if a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees under par. (b), the health care provider ***shall*** provide the person making the request copies of the requested records.

   Wis. Stat. §146.83(3f)(a) (Emphasis added.)

43. Wis. Stat. §§146.83(3f)(b)(1) - (6) dictates the maximum charges that may be charged and collected for medical records and provides:

> Except as provided in sub. (1f), a health care provider may charge no more than the total of all of the following that apply for providing the copies requested under par. (a):

10

1.    For paper copies: $1 per page for the first 25 pages; 75 cents per page for pages 26 to 50; 50 cents per page for pages 51 to 100; and 30 cents per page for pages 101 and above.
2.    For microfiche or microfilm copies, $1.50 per page.
3.    For a print of an X–ray, $10 per image.
4.    ***If the requester is not the patient or a person authorized by the patient***, for certification of copies, a single $8 charge.
5.    ***If the requester is not the patient or a person authorized by the patient***, a single retrieval fee of $20 for all copies requested.
6.    Actual shipping costs and any applicable taxes.

Wis. Stat. §146.83(3f)(b)(1) - (6) (emphasis added.)

44. The phrase "person authorized by the patient" is defined in Wis. Stat. § 146.81(5) to mean "any person authorized in writing by the patient." This language is unambiguous and clear and would obviously exempt anyone with a HIPAA compliant medical records release.

45. Mr. Fotusky filed this suit because he was wrongfully charged a basic, retrieval and/or a certification fee and/or other unauthorized fee by the Defendants in violation of Wis. Stat. §146.83(3f)(b)(4) - (5).

46. For medical records production related to EBIX invoice number LCE79726, EBIX and PROHEALTH charged the Plaintiff a basic, retrieval and/or a certification fee and/or other unauthorized fee although the request was made by the plaintiff or a person authorized in writing by the Plaintiff, namely, his attorneys.

47. For medical records production related to PROHEALTH invoice numbers 21786 and 23017, PROHEALTH charged the Plaintiff a basic, retrieval and/or a certification fee and/or other unauthorized fee although the request was made by the plaintiff or a person authorized in writing by the Plaintiff, namely, his attorneys.

48. That all invoices issued from EBIX and PROHEALTH to Plaintiff or his counsel were paid.

11

49. EBIX and/or PROHEALTH have charged other Wisconsin residents a basic, retrieval and/or a certification fee and/or other unauthorized fee although the request for the records or bills was made by the patients themselves or persons authorized in writing by them.

50. EBIX and/or PROHEALTH were not entitled to charge the Plaintiff or the Class Members, either directly or through their agent a basic, retrieval and/or a certification fee and/or other unauthorized fee.

51. EBIX and/or PROHEALTH have charged non-allowed fees and fees in excess of the amounts allowed by Wisconsin law.

52. EBIX and PROHEALTH have violated the provisions of Wis. Stat. §146.83.

53. Plaintiff and the Class Members who have been wrongfully charged a basic, retrieval and/or a certification fee and/or other unauthorized fee are entitled to recover the illegal fees charged by the Defendants.

54. EBIX and/or PROHEALTH knowingly and willfully violated Wis. Stat. §146.83 by charging the Plaintiff and the Class Members a basic, retrieval and/or a certification fee and/or other unauthorized fee.

55. The violation of Wis. Stat. §146.83, subjects EBIX and PROHEALTH to exemplary damages of between $1.00 and $25,000.00 per violation, plus costs and reasonable actual attorney fees pursuant to Wis. Stat. §146.84(1)(a).

56. Plaintiff and the Class Members have incurred actual damages due to the knowing and willful violation of Wis. Stat. §146.83 by EBIX and/or PROHEALTH.

57. Plaintiff and the Class Members are entitled to recover their damages, plus exemplary damages of between $1.00 and $25,000.00 per violation, plus costs and reasonable actual

attorney fees from Defendants for the knowing and willful violation of Wis. Stat. §146.83 by EBIX and/or PROHEALTH.

58. Alternatively, EBIX and/or PROHEALTH negligently violated Wis. Stat. §146.83 by charging retrieval fees, certification fee or other inappropriate fees.

59. A negligent violation of Wis. Stat. §146.83, subjects Defendants to exemplary damages of between $1.00 and $1,000.00 per violation, plus costs and reasonable actual attorney fees pursuant to Wis. Stat. §146.84(1)(b).

60. Plaintiff and the Class Members have incurred actual damages due to the negligent violation of Wis. Stat. §146.83 by EBIX and/or PROHEALTH.

61. Plaintiff and the Class Members are entitled to recover their damages, plus exemplary damages of between $1.00 and $1,000.00 per violation, plus costs and reasonable actual attorney fees from Defendants for the negligent violation of Wis. Stat. §146.83.

## UNJUST ENRICHMENT - DISGORGEMENT

62. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

63. EBIX and PROHEALTH knew the money charged to the Plaintiff and the Class Members were unlawful.

64. EBIX and/or PROHEALTH appreciated and received the benefit of the money they charged illegally.

65. EBIX and/or PROHEALTH's retention of said benefit is inequitable and unjust and Defendants should be required to return said money and disgorge all illegal charges, profits and interest earned on same.

13

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in favor of Plaintiff and the Class Members and against the Defendants as follows|:

1) Certify the Proposed Classes, appoint the Plaintiff as Class Representative and appoint his counsel as Class Counsel;

2) For compensatory damages in an amount to be determined at trial by a jury;

3) For exemplary damages up to $25,000.00 per violation, plus costs and reasonable actual attorney's fees incurred by Plaintiff(s);

4) For the return of all monies, profit, interest and pre-judgment interest on all sums illegally collected;

5) For such other and further relief as this court finds necessary and proper.

---

PLAINTIFF REQUESTS A TRIAL BY JURY

---

Dated this 28th day of January, 2018.

WELCENBACH LAW OFFICES, S.C.
Attorney for Plaintiff

Electronically submitted by Robert J. Welcenbach
Robert J. Welcenbach
State Bar No. 1033091

14

# Supreme Court of Wisconsin

| | |
|---|---|
| Case No.: | 2014AP2236 |
| Complete Title: | Carolyn Moya,<br> Plaintiff-Respondent-Petitioner,<br>v.<br>Aurora Healthcare, Inc. and Healthport<br>Technologies, LLC,<br> Defendants-Appellants. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
366 Wis. 2d 541, 874 N.W. 2d 336
(2016 WI App 5 – Published)

| | |
|---|---|
| Opinion Filed: | May 4, 2017 |
| Submitted on Briefs: | |
| Oral Argument: | October 20, 2016 |

| | |
|---|---|
| Source of Appeal: | |
| Court: | Circuit |
| County: | Milwaukee |
| Judge: | Karen E. Christenson |

| | |
|---|---|
| Justices: | |
| Concurred: | |
| Dissented: | ZIEGLER, J. dissents (opinion filed). |
| Not Participating: | BRADLEY, R. G., J. and KELLY, J. did not participate. |

Attorneys:

For the plaintiff-respondent-petitioners, there was a brief by *Robert J. Welcenbach* and *Welcenbach Law Offices, S.C.,* Milwaukee, and oral argument by *Robert J. Welcenbach.*

For the defendants-appellants, there was a brief by *John Franke*, *Daniel A. Manna* and *Gass, Weber and Mullins, LLC,* Milwaukee, and oral argument by *John Franke.*

EXHIBIT
A

2017 WI 45

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No.  2014AP2236
(L.C. No.  13-CV-2642)

STATE OF WISCONSIN                    :           IN SUPREME COURT

**Carolyn Moya,**

       **Plaintiff-Respondent-Petitioner,**

   **v.**

**Aurora Healthcare, Inc. and Healthport Technologies, LLC,**

       **Defendants-Appellants.**

**FILED**

**MAY 4, 2017**

Diane M. Fremgen
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals.  *Reversed and remanded for further proceedings.*

¶1    MICHAEL  J.  GABLEMAN,  J.    This  is  a  review  of  a published  decision  of  the  court  of  appeals  that  reversed  the Milwaukee  County  circuit  court's[1]  denial  of  Aurora  Healthcare, Inc.  and  Healthport  Technologies,  LLC's  (collectively  referred to  as  "Healthport")  motion  for  summary  judgment  and  remanded  the case  with  directions  to  grant  Healthport's  motion  for  summary

---

[1] The Honorable Karen E. Christenson presiding.

judgment. <u>Moya v. Aurora Healthcare, Inc.</u>, 2016 WI App 5, 366 Wis. 2d 541, 874 N.W.2d 336.

¶2   Today, we are asked to interpret the meaning of the phrase "person authorized by the patient" in Wis. Stat. § 146.83(3f)(b)4.-5. (2013-14),[2] which exempts a "patient or a person authorized by the patient" from paying certification charges and retrieval fees for obtaining copies of the patient's health care records.   More particularly, we are asked to determine whether an attorney whose client authorized him via a HIPAA[3] release form to obtain her health care records may benefit from this fee exemption.   Because the phrase "person authorized by the patient" is defined in Wis. Stat. § 146.81(5) to include "any person authorized in writing by the patient," we hold that an attorney authorized by his or her client in writing via a HIPAA release form to obtain the client's health care records is a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b)4.-5. and is therefore exempt from certification charges and retrieval fees under these subdivisions. Consequently, the decision of the court of appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____

[2] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

[3] HIPAA stands for Health Insurance Portability and Accountability Act.   A HIPAA release form is a type of form wherein a patient consents to the release of his or her health care information to a third party.

Case 2:18-cv-00305-LA   Filed 03/30/18   Page 17 of 60   Document 19-1

¶3    We begin with a brief factual background and description of the procedural history. We then set forth the standard of review and the relevant rules for statutory interpretation. We then conclude that Carolyn Moya's ("Moya") attorney is a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b)4.-5. and is therefore exempt from the certification charge and retrieval fee authorized by that statute. Next, we address Healthport's arguments that the doctrines of voluntary payment and waiver bar Moya's claim.

I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A.    The Statutes Governing Access to Health Care Records

¶4    Access to patient health care records is governed by Wis. Stat. § 146.83. Under subsec. (3f), a health care provider shall, subject to exceptions that are inapplicable here, provide copies of a patient's health care records "if a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees under par. (b)." § 146.83(3f)(a).

¶5    Pursuant to para. (b), health care providers may impose certain costs on the person requesting health care records under para. (a):

> (b) Except as provided in sub. (1f), a health care provider may charge no more than the total of all of the following that apply for providing the copies requested under par. (a):
>
> 1. For paper copies: $1 per page for the first 25 pages; 75 cents per page for pages 26 to 50; 50 cents per page for pages 51 to 100; and 30 cents per page for pages 101 and above.

3

2. For microfiche or microfilm copies, $1.50 per page.

3. For a print of an X-ray, $10 per image.

4. If the requester is not the patient or a person authorized by the patient, for certification of copies, a single $8 charge.

5. If the requester is not the patient or a person authorized by the patient, a single retrieval fee of $20 for all copies requested.

6. Actual shipping costs and any applicable taxes.

Wis. Stat. § 146.83(3f)(b) (emphasis added). According to subd. 4. and subd. 5., the patient and a person authorized by the patient are exempt from the certification charge and retrieval fee. This statute, though, does not provide a definition for a "person authorized by the patient."

¶6 Instead, a "person authorized by the patient" is defined in Wis. Stat. § 146.81(5) as

the parent, guardian, or legal custodian of a minor patient, as defined in s. 48.02 (8) and (11), the person vested with supervision of the child under s. 938.183 or 938.34 (4d), (4h), (4m), or (4n), the guardian of a patient adjudicated incompetent in this state, the person representative, spouse, or domestic partner under ch. 770 of a deceased patient, any person authorized in writing by the patient or a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05 (2), except as limited by the power of attorney for health care instrument. If no spouse or domestic partner survives a deceased patient, "person authorized by the patient" also means an adult member of the deceased patient's immediate family, as defined in s. 632.895 (1)(d). A court may appoint a temporary guardian for a patient believed incompetent to consent to the release of records under this section as the person authorized by

4

> the patient to decide upon the release of records, if
> no guardian has been appointed for the patient.

(Emphasis added). Because this definition uses the disjunctive "or," see Hull v. State Farm Mut. Auto. Ins., 222 Wis. 2d 627, 638, 586 N.W.2d 863 (1998) ("'[O]r' should be interpreted disjunctively."), in order to be a person authorized by the patient under Wis. Stat. § 146.83(3f)(b)4.-5., and therefore enjoy exemption from the certification charge and retrieval fee, a person must fall into only one of the above categories of persons. One of the categories in the above definition is "any person authorized in writing by the patient," and it is this category on which Moya relies in arguing that her attorney is a "person authorized by the patient" under § 146.83(3f)(b)4.-5.

### B. Moya's Class Action Lawsuit

¶7 This case comes to us by way of a class action lawsuit filed by Moya on behalf of not only herself but all other similarly situated persons who have been billed the certification charge and retrieval fee by Healthport for obtaining their own healthcare records. The class action arose from Moya's personal injury claim[4] in which Moya hired Welcenbach Law Offices, S.C. to represent her and the law firm had to pay the certification charge and retrieval fee, despite the fact that Moya had authorized the law firm in writing to obtain those records.

---

[4] Moya's personal injury claim arose from a car accident in 2011 from which she sustained injuries. This claim has since been settled.

5

¶8    Moya authorized her attorney, Robert Welcenbach, to obtain her health care records by signing HIPAA release forms giving to Welcenbach Law Offices, S.C. "authoriz[ation] to receive [her] health information."

¶9    Atty. Welcenbach subsequently submitted requests for Moya's health care records,[5] and Healthport, when fulfilling the requests, imposed certification charges and retrieval fees pursuant to Wis. Stat. § 146.83(3f)(b)4.-5. Atty. Welcenbach paid the certification charges and retrieval fees and passed the associated costs to Moya by deducting the costs from the settlement proceeds resulting from her personal injury claim.[6]

¶10   At the time Healthport invoiced Atty. Welcenbach, he paid the costs, and he did not specifically dispute them. However, he had on multiple previous occasions disputed the imposition of such costs in other cases.

---

[5] Atty. Welcenbach submitted his request to Moya's health care provider, Aurora Healthcare, Inc. ("Aurora"), but Aurora and Healthport have an agreement whereby Healthport handles Aurora's health care records requests.

[6] The total deducted from Moya's settlement proceeds for these costs was $294.70.

Contrary to the assertion made by the dissent, the fact that Atty. Welcenbach passed these costs along to Moya was not a factor in arriving at our conclusion that Atty. Welcenbach is a person authorized by the patient for purposes of Wis. Stat. § 146.83(3f)(b)4.-5. See dissent, ¶62 n.3. Our determination that Atty. Welcenbach is a person so authorized is derived from our application of the plain language of the statute and nothing more.

6

¶11  In  response  to  Healthport's  imposition  of  the certification charges and retrieval fees, Moya filed this class action lawsuit.  She argues that Healthport violated Wis. Stat. § 146.83(3f)(b)4.-5. when it imposed the certification charges and retrieval fees because her attorney is a "person authorized by the patient," thereby exempting her attorney from paying the certification charges and retrieval fees.

¶12 Healthport  moved  to  dismiss  Moya's  complaint  for failure  to  state  a  claim,  and  the  circuit  court[7]  denied Healthport's  motion.   Healthport  filed  an  answer,  and  the parties  underwent  limited  discovery.   After  the  limited discovery, Healthport filed a motion for summary judgment asking the circuit court to dismiss Moya's claim with prejudice.  The circuit court[8] denied Healthport's motion.  Healthport filed a motion for reconsideration, and the circuit court[9] again denied Healthport's motion.

¶13  Healthport  filed  an  interlocutory  appeal,  and  the court  of  appeals  reversed  the  circuit  court's  denial  of Healthport's motion for summary judgment and remanded the case with instructions to grant Healthport's motion.  Moya, 366 Wis. 2d 541, ¶1.  The court of appeals determined that Moya's attorney  was  not  a  "person  authorized  by  the  patient"  and

---

[7] The Honorable William W. Brash III presiding.

[8] The Honorable Karen E. Christenson presiding.

[9] The Honorable Pedro A. Colon presiding.

7

therefore Healthport could impose the certification charges and retrieval fees on Moya's attorney. _Id._, ¶16. Judge Kessler dissented stating that she would uphold the circuit court's denial of Healthport's motion for summary judgment and would conclude that Healthport could not impose the certification charge and retrieval fee. _Id._, ¶¶28-29 (Kessler, J., dissenting).

¶14 Moya petitioned this court for review, which we granted in order to determine whether her attorney is a "person authorized by the patient" and thus exempt from paying the certification charge and the retrieval fee found in Wis. Stat. § 146.83(3f)(b)4.-5.

## II. STANDARD OF REVIEW

¶15 "Whether the circuit court properly granted summary judgment is a question of law that this court reviews de novo." _Racine County v. Oracular Milwaukee, Inc._, 2010 WI 25, ¶24, 323 Wis. 2d 682, 781 N.W.2d 88 (quoting _Hocking v. City of Dodgeville_, 2009 WI 70, ¶7, 318 Wis. 2d 681, 768 N.W.2d 552). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2). In making this determination, this court applies a two-step test. _Green Spring Farms v. Kersten_, 136 Wis. 2d 304, 314-15, 401 N.W.2d 816 (1987). Under the first step, this court asks if the plaintiff stated a claim for relief. _Id._ at 315. Under the

8

second step, this court applies the summary judgment statute and asks if any factual issues exist that preclude summary judgment. Id.

¶16 "We review questions of statutory interpretation and application independently, but benefiting from the discussions of the circuit court and the court of appeals." State v. Grunke, 2008 WI 82, ¶10, 311 Wis. 2d 439, 752 N.W.2d 769.

### III. DISCUSSION

#### A. The Rules of Statutory Interpretation

¶17 "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory interpretation begins with the text of the statute. Id., ¶45 (quoting Seider v. O'Connell, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659). If the text of the statute is plain and unambiguous, our inquiry stops there. Id. (quoting Seider, 236 Wis. 2d 211, ¶43).

¶18 If the text is ambiguous, we must look beyond the text to other, extrinsic sources of information, such as legislative history, to interpret the statute. Id., ¶46. "[A] statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." Id., ¶47. Even without ambiguity, though, we may consult extrinsic sources to confirm our understanding of the plain language of a statute. Id., ¶51.

9

¶19 "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id., ¶45. We also look to the context: "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id., ¶46.

B. Interpretation of "Any Person Authorized in Writing by the Patient"

¶20 Moya argues that "any person authorized in writing by the patient" in Wis. Stat. § 146.81(5) is "defined broadly by the legislature" and that the plain meaning of the statutory language requires nothing more than a person and a written authorization from the patient. Thus, Moya's attorney qualifies as a "person authorized in writing by the patient" simply because he is a person and has a written authorization from Moya in the nature of the HIPAA release form. Healthport, on the other hand, argues that the context of § 146.81(5) indicates that the person authorized in writing by the patient must (in addition to having authorization to obtain health care records) also be authorized to make health care decisions on behalf of the patient. In response to this argument, Moya says Healthport can achieve this definition only by adding its own language to the statute.

¶21 After examining the language of the statute and applying the well-established rules of statutory interpretation,

10

we agree with Moya. The context of the statutory definition of
"person authorized by the patient" provided in § 146.81(5)
indicates that "any person authorized in writing by the patient"
is a stand-alone category, separate and apart from the remaining
categories, containing no limitations beyond those expressly
written. We base our determination in this regard on the
punctuation and conjunctions given in the statute and see these
categories as follows:

    (1) "[T]he parent, guardian, or legal custodian of a minor
        patient, as defined in s. 48.02 (8) and (11)";

    (2) "the person vested with supervision of the child under
        s. 938.138 or 938.34 (4d), (4h), (4m), or (4n)";

    (3) "the guardian of a patient adjudicated incompetent in
        this state";

    (4) "the personal representative, spouse, or domestic
        partner under ch. 770 of a deceased patient";

    (5) "any person authorized in writing by the patient or";

    (6) "a health care agent designated by the patient as a
        principal under ch. 155 if the patient has been found
        to be incapacitated under s. 155.05(2), except as
        limited by the power of attorney for health care
        instrument."

    (7) "If no spouse or domestic partner survives a deceased
        patient, 'person authorized by the patient' also means
        an adult member of the deceased patient's immediate
        family, as defined in s. 632.895(1)(d)."

    (8) "A court may appoint a temporary guardian for a
        patient believed incompetent to consent to the release
        of records under this section as the person authorized
        by the patient to decide upon the release of the
        records, if no guardian has been appointed for the
        patient."

Wis. Stat. § 146.81(5) (emphasis added).

¶22  Thus, the phrase "any person authorized in writing by the patient" must be interpreted as its own category of persons authorized by the patient.  The statutory language is unambiguous in that it requires only a person with a written authorization from the patient.  The plain meaning of the statute does not require that the authorization be an authorization to make health care decisions on behalf of the patient.  Thus, when the phrase "person authorized by the patient" is used in Wis. Stat. § 146.83(3f)(b)4.-5. in the context of obtaining copies of health care records, it includes "any person authorized in writing by the patient" to obtain such records.  The definition requires no additional authorization for such person to qualify for the exemption from the certification charge and retrieval fee.

¶23  Healthport argues that this conclusion is inconsistent with the general principle that we interpret an item in a list consistently with the remaining items in the list.  See State v. Popenhagen, 2008 WI 55, ¶46, 309 Wis. 2d 601, 749 N.W.2d 611. From this general principle, Healthport urges us to conclude that "any person authorized in writing by the patient" must have the ability to make health care decisions on the patient's behalf.  Healthport's argument runs as follows:  Because each of the other categories of persons in the definition of "person authorized by the patient" in Wis. Stat. § 146.81(5) has the authority to make health care decisions on behalf of the patient, the fifth category listed above must have that

12

authority as well in order to qualify as a "person authorized by the patient."

¶24 This argument is unpersuasive in light of the relevant statutory context. Examining the various categories in the definition of "person authorized by the patient" in Wis. Stat. § 146.81(5) demonstrates that the legislature did not specify that each must have the authority to make health care decisions for the patient. Instead, the legislature placed varying parameters on each distinct category. For example, in the first category, the legislature chose to limit it to the parent, guardian, or legal custodian of a minor patient. Therefore, a parent, guardian, or legal custodian of a minor is automatically a "person authorized by the patient" wherever that phrase appears in Wis. Stat. §§ 146.81-.84; nothing else is necessary to qualify and no other limitation is imposed. Other categories, however, are narrower. For example, the eighth category is specifically limited to a temporary guardian appointed by a court to "decide upon the release of records" for an incompetent patient. At least for this category, having specific authorization to make health care decisions for the incompetent patient is a requirement.

¶25 We cite these instances of circumscription within the statute not as demonstrations of the legislature's collective facility with language but, rather, to bolster our understanding that, when the legislature chooses to say "any person authorized in writing by the patient," we must interpret these words without the kind of limitation proposed by Healthport. Cf.

13

Indus. to Indus., Inc. v. Hillsman Modular Molding, Inc., 2002 WI 51, ¶19, 252 Wis. 2d 544, 644 N.W.2d 236. Put simply, had the legislature intended to place parameters of the kind Healthport suggests on a person authorized in writing by the patient, "it would have done so." Id. It did not, and so we do not.[10]

¶26 Healthport argues that interpreting the category "any person authorized in writing by the patient" without the additional requirement that the authorization be for making health care decisions creates chaos and inconsistency throughout the statutory scheme. Without constancy as to what the authorization must be for, Healthport argues that the definition of a "person authorized by the patient" would change each time it is used throughout the statute. However, it is enough to refute this argument to note that, contrary to what Healthport argues, the definition of a "person authorized by the patient" remains constant throughout the statutes governing access to health care records. Instead of creating chaos, permitting the specific nature of the authorization allows for flexibility. In

---

[10] According to the dissent, such an interpretation is one done in a vacuum, not taking into account the context in which the words are written. E.g., dissent, ¶41. However, interpreting the text to also contain the words "to consent to the release of the patient's health care records" ignores the immediate context of the text we are asked to interpret here because it does not take into account the distinction between "any person authorized in writing by the patient" and the other categories of persons used in the statute.

Case 2:18-cv-00305-LA   Filed 03/30/18   Page 29 of 60   Document 19-1

all cases, we simply look to the written authorization to determine what the patient has authorized the person to do.

¶27 Because the definition of "any person authorized in writing by the patient" does not specify what the person must be authorized to do, the written authorization necessary for an attorney to qualify will depend on the function the attorney seeks to perform. In other words, why an attorney might need written authorization may be different in different contexts. For example, to perform the function of a "person authorized by the patient" in some contexts, the attorney might need authorization to make certain decisions on behalf of the patient. See, e.g., Wis. Stat. § 146.82(1) (informed consent to release records may be given by a "person authorized by the patient"). But in other contexts, the attorney would only need authorization to receive copies of health care records. That is the case in Wis. Stat. § 146.83(3f), the statute governing requests for copies of such records. Regardless of the context, what mattered to the legislature in defining "person authorized by the patient" to include "any person authorized in writing by the patient" is that the person does have written authorization from the patient to perform the relevant function.

¶28 Past iterations of the statute support our conclusion that the plain meaning of "any person authorized in writing by the patient" is exactly what it says. See County of Dane v. LIRC, 2009 WI 9, ¶27, 315 Wis. 2d 293, 759 N.W.2d 571 (quoting Richards v. Badger Mut. Ins., 2008 WI 52, ¶22, 309 Wis. 2d 541, 749 N.W.2d 581) (statutory context includes past iterations of

15

the statute). When the legislature first enacted the statute in 1979, Wis. Stat. § 146.81(5) defined "person authorized by the patient" as

> the parent, guardian or legal custodian of a minor patient, as defined in s. 48.02 (9) and (11), the guardian of a patient adjudged incompetent, as defined in s. 880.01 (3) and (4), the personal representative or spouse of a deceased patient or any person authorized in writing by the patient.

In this version of the statute, "any person authorized in writing by the patient," as evidenced by the use of "or," is the last category of persons considered a "person authorized by the patient." We see from our reading of the 1979 statute that "any person authorized in writing by the patient" has always been a distinct category of persons——one without limitation other than a requirement of authorization in writing from the patient.

¶29 Nevertheless, Healthport argues that a 2014 amendment to the statutes governing health care records, Wis. Stat. § 146.83(1b), provides context that shows that the legislature intended to exclude attorneys from the definition of a "person authorized by the patient." The 2014 addition of § 146.83(1b) states, "Notwithstanding s. 146.81(5), in this section a 'person authorized by the patient' includes an attorney appointed to represent the patient under s. 977.08[11] if that attorney has written informed consent from the patient to view and obtain copies of the records." According to Healthport, the

---

[11] Wisconsin Stat. § 977.08 relates to the appointment of a state public defender.

legislature's use of "[n]otwithstanding" shows that the legislature, in § 146.83(1b), included a certain type of attorney——public defenders——as a person authorized by the patient to receive health care records in spite of a general exclusion of attorneys from Wis. Stat. § 146.81(5).

¶30 While the legislature may have intended to expressly include public defenders, we decline Healthport's implicit invitation to add limiting language to Wis. Stat. § 146.81(5). The legislature, with its use of "any person," chose not to place a limit on who could be authorized in writing by the patient under § 146.81(5), and we give effect to the enacted text. See Bruno v. Milwaukee County, 2003 WI 28, ¶14, 260 Wis. 2d 633, 660 N.W.2d 656 (refusing to add additional requirements to the definition of "retirement" because those additional requirements were not mentioned in the text). And more to the point, nothing about the express inclusion of public defenders leads us to conclude the legislature intended to exclude other attorneys.[12]

---

[12] Healthport has failed to establish that the doctrine of expressio unius est exclusio alterius (the expression of one thing is the exclusion another) applies here because nothing indicates that the legislature considered attorneys other than public defenders when enacting the language of Wis. Stat. § 146.83(1b). See Wis. Citizens Concerned for Cranes & Doves v. DNR, 2004 WI 40, ¶17 n.11, 270 Wis. 2d 318, 677 N.W.2d 612 ("This rule may be applied only where there is some evidence that the legislature intended it to apply.").

(continued)

¶31 In sum, Moya's attorney qualifies as a "person authorized by the patient" because he is a person, he has a written authorization from Moya via the HIPAA release form, and Moya, the patient, signed the HIPAA release form to provide her attorney the authorization to receive her health care records. Therefore, as a person authorized by the patient, Moya's attorney is exempt from the certification charges and retrieval fees Healthport imposed under Wis. Stat. § 146.83(3f)(b)4.-5.

C. The Doctrine of Voluntary Payment Does Not Apply

¶32 Healthport argues that the doctrine of voluntary payment bars Moya's class action lawsuit and thereby entitles Healthport to summary judgment; however, we conclude that the doctrine of voluntary payment does not apply.

¶33 "The voluntary payment doctrine places upon a party who wishes to challenge the validity or legality of a bill for payment the obligation to make the challenge either before voluntarily making payment, or at the time of voluntarily making payment." Putnam v. Time Warner Cable of Se. Wis., Ltd. P'ship, 2002 WI 108, ¶13, 255 Wis. 2d 447, 649 N.W.2d 626. "[T]he voluntariness in the doctrine goes to the willingness of a

_____

The dissent also seems to be looking for "attorneys" to be expressly and specifically listed persons authorized by the patient. See, e.g., dissent, ¶42. However, if we are to look for such narrow categories, who then would qualify? The answer is no one because no category of persons is so specifically listed in the statute.

Case 2:18-cv-00305-LA   Filed 03/30/18   Page 33 of 60   Document 19-1

person to pay a bill <u>without protest as to its correctness or legality</u>." <u>Id.</u>, ¶15.

¶34 It is axiomatic that we give effect to the legislature's expressed intent when we interpret statutes. <u>Kalal</u>, 271 Wis. 2d 633, ¶44. Here, we determined that the legislature's expressed intent that a person with a written authorization from a patient does not have to pay the certification charge or retrieval fee for obtaining health care records. Thus, "[a]pplication of the common law voluntary payment doctrine would undermine the manifest purposes of [Wis. Stat. § 146.83(3f)]." <u>MBS-Certified Pub. Accountants, LLC v. Wis. Bell, Inc.</u>, 2012 WI 15, ¶4, 338 Wis. 2d 647, 809 N.W.2d 857. Consequently, we cannot apply it in this case to bar Moya's claim.

D. The Doctrine of Waiver Does Not Apply

¶35 Healthport also argues that Moya's class action lawsuit is barred by the doctrine of waiver. We disagree.

¶36 "Waiver has been defined as a voluntary and intentional relinquishment of a known right." <u>Attoe v. State Farm Mut. Auto. Ins.</u>, 36 Wis. 2d 539, 545, 153 N.W.2d 575 (1967). Waiver can be done through conduct. <u>Id.</u>

¶37 Healthport argues that Moya waived her ability to obtain her health care records at a lower cost because she chose to authorize her attorney to obtain her health care records instead of requesting them herself, thereby voluntarily and intentionally relinquishing her right not to be charged the certification charge and retrieval fee. As with the application

19

of the doctrine of voluntary payment, we decline to apply the doctrine of waiver to subvert the legislature's intent. To conclude that the doctrine of waiver applies would require us to conclude that Moya's attorney has to pay the certification charge and retrieval fee. However, we conclude that Moya's attorney does not have to pay the certification charge or retrieval fee because he is a "person authorized by the patient." Thus, the doctrine of waiver does not apply to bar Moya's class action lawsuit.

## IV. CONCLUSION

¶38 Because the phrase "person authorized by the patient" is defined in Wis. Stat. § 146.81(5) to include "any person authorized in writing by the patient," we hold that an attorney authorized by his or her client in writing via a HIPAA release form to obtain the client's health care records is a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b)4.-5. and is therefore exempt from certification charges and retrieval fees under those subdivisions.

*By the Court.*—The decision of the court of appeals is reversed and the case is remanded for proceedings consistent with this opinion.

¶39 REBECCA GRASSL BRADLEY and DANIEL KELLY, JJ., did not participate.

20

¶40 ANNETTE KINGSLAND ZIEGLER, J. *(dissenting).* The question before this court is whether a personal injury attorney who obtains his or her client's written consent to receive copies of the client's health care records is a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b), such that the attorney need not pay certification and retrieval fees when requesting copies of the records from a health care provider. The circuit court concluded that such an attorney is exempt from the fees as a "person authorized by the patient." The court of appeals in examining the same statutory language answered this question in the negative, concluding that a "person authorized by the patient" within the meaning of Wis. Stat. §§ 146.81(5) and 146.83(3f)(b) is a person who has "the power to consent to the <u>release</u> of the patient's records," not a person who merely has the power to receive those records. <u>Moya v. Aurora Healthcare, Inc.</u>, 2016 WI App 5, ¶16, 366 Wis. 2d 541, 874 N.W.2d 336 (emphasis added). This court reverses that court of appeals' determination today purportedly because the language is clear. I write because when utilizing traditional methods of statutory interpretation, examining the text, its context and construction, the plain meaning demonstrates that "person authorized by the patient" has a less expansive meaning than my colleagues have adopted.

¶41 The court concludes that an attorney authorized by his or her client in writing to obtain the client's health care records is a "person authorized by the patient" under Wis. Stat. §§ 146.81(5) and 146.83(3f)(b). In so doing it explains that it

1

is relying on the "plain meaning" of the statute. I acknowledge that the interpretation of the statutes adopted by this court is defensible if one only looks at those words in a vacuum. The conclusion of the court of appeals, however, is also supported by the text. How do we know which interpretation is correct? Each interpretation relies on the language of the statute, yet the court of appeals and this court reach opposite conclusions. I endeavor to wade through a more thorough statutory analysis in order to reach a conclusion.

¶42 As a practical matter, it certainly makes sense that the legislature might choose to exempt personal injury attorneys from the challenged fees. These attorneys act as advocates for their clients and perhaps should be able to obtain the records without the fee. However, these lawyers are not listed in Wis. Stat. § 146.81(5), the statute that defines "person authorized by the patient," nor are they exempt under Wis. Stat. § 146.83(1b), whereby the legislature determined that public defenders need not pay the fee. These lawyers do not fall into the class of persons listed in § 146.81(5) as they are not otherwise legally poised to essentially become the decision-maker for the patient when the patient cannot legally act on his or her behalf. Section 146.81(5) defines "person authorized by the patient" in part to be:

> [T]he parent, guardian, or legal custodian of a minor patient, as defined in s. 48.02(8) and (11), the person vested with supervision of the child under s. 938.183 or 938.34(4d), (4h), (4m), or (4n), the guardian of a patient adjudicated incompetent in this state, the personal representative, spouse, or domestic partner under ch. 770 of a deceased patient,

2

> any person authorized in writing by the patient or a
> health care agent designated by the patient as a
> principal under ch. 155 if the patient has been found
> to be incapacitated under s. 155.05(2), except as
> limited by the power of attorney for health care
> instrument.

§ 146.81(5).  Notably absent in this provision are lawyers who advocate on a patient's behalf in a lawsuit.[1]  While it may make sense to exempt these lawyers from paying fees, the choice is not the court's to make; it is within the province of the legislature.  I must examine the text of the statute at issue using fundamental tools of statutory construction to determine which of two interpretations of the phrase "person authorized by the patient" was intended by the legislature; as put by Aurora Healthcare, Inc., and Healthport Technologies, LLC ("Healthport"), these two interpretative options are: (1) "any person authorized in writing by the patient to obtain the patient's health care records"; or (2) "any person authorized in writing by the patient to consent to the release of the patient's health care records."  In so doing I look to the surrounding text and examine that text in light of the canons of construction, not just part of the statutory text, in a vacuum.

> It is . . . a solemn obligation of the judiciary to
> faithfully give effect to the laws enacted by the
> legislature, and to do so requires a determination of
> statutory meaning.  Judicial deference to the policy
> choices enacted into law by the legislature requires
> that statutory interpretation focus primarily on the

---

[1] Those attorneys advocate on behalf of the client/patient and may receive authority from a client to, for example, settle a case; importantly, however, such attorneys, unlike those persons in Wis. Stat. § 146.81(5), are not standalone decision-makers who act with or without the patient's consent.

3

> language of the statute. We assume that the
> legislature's intent is expressed in the statutory
> language. . . . It is the enacted law, not the
> unenacted intent, that is binding on the public.
> Therefore, the purpose of statutory interpretation is
> to determine what the statute means so that it may be
> given its full, proper, and intended effect.

State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58,
¶44, 271 Wis. 2d 633, 681 N.W.2d 110.

¶43 Given the above charge, I write to examine the statutes at issue and the court's reasoning, considering the disputed statutory text in context and in light of fundamental canons of construction. For reasons I will explain, the interpretation adopted by the court today fails to adhere to fundamental principles of statutory construction and in fact renders the overall statutory scheme virtually meaningless. Ultimately, I would conclude, like the court of appeals, that the text of the statutes requires a conclusion that Moya's personal injury attorney is not a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b). The lawyer at issue is not within the definition of "person authorized by the patient" in Wis. Stat. § 146.81(5) nor is he or she exempt from payment of fees under § 146.83(1b) as are other lawyers. Thus, I must respectfully dissent.

I

¶44 I begin by setting forth established principles of statutory interpretation. Statutory interpretation is governed first and foremost by the principle that "[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." Antonin Scalia &

4

Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 56 (2012) (denominating this rule the "Supremacy-of-Text Principle"). Judges should "determin[e] the application of a governing text to given facts on the basis of how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued." Id. at 33. This approach recognizes that "[t]he law is what the law says," Bank One Chicago, N.A. v. Midwest Bank & Trust Co., 516 U.S. 264, 279 (1996) (Scalia, J., concurring in part and concurring in the judgment), and that "[a]n interpreter who bypasses or downplays the text becomes a lawmaker without obeying the constitutional rules for making law." Frank H. Easterbrook, Textualism and the Dead Hand, 66 Geo. Wash. L. Rev. 1119, 1120 (1998).

¶45 Proper statutory interpretation rests on the fundamental premise that "[n]othing but conventions and contexts cause a symbol or sound to convey a particular idea." Scalia & Garner, supra, at xxvii (emphases added).

> The enactment of a law is a form of communication through language——from the law-giver to those affected by the law, as well as to those who must enforce, apply, or interpret the law. This sort of communication is only possible if the participants have a set of shared practices and conventions that permit them to convey meaning to each other. At the most basic level, intelligible communication requires that both parties attach the same meaning to the same sounds or signs. Furthermore, we often need to be able to tell which of several possible meanings is intended by considering the context in which a word is used. Our shared practices and conventions also go beyond word meanings. The rules of grammar and syntax, for example, represent shared conventions that assist us in decoding the communications of others.

5

John F. Manning & Matthew C. Stephenson, <u>Legislation and Regulation</u> 222 (2010).

¶46 These twin pillars of interpretation, context and convention, are indispensable to the functioning of the judiciary. Convention is sometimes realized in part through the implementation of certain "canons of construction," which are "rules of thumb that that help courts determine the meaning of legislation." <u>Connecticut Nat'l Bank v. Germain</u>, 503 U.S. 249, 253 (1992). A number of these canons will be discussed in more detail below.

¶47 Context, on the other hand, includes (1) "the purpose of the text," which must be "gathered only from the text itself, consistently with the other aspects of its context"; (2) "a word's historical associations acquired from recurrent patterns of past usage"; and (3) "a word's immediate syntactic setting—— that is, the words that surround it in a specific utterance." Scalia & Garner, <u>supra</u>, at 33 (emphasis omitted) (citing I.A. Richards, <u>Interpretation in Teaching</u> viii (1938)).

¶48 Application of these principles——an unrelenting focus on the meaning of the text, discovered through a careful examination of context and the application, where necessary, of canons of construction——promotes "certainty, predictability, objectivity, reasonableness, rationality, and regularity, which are the objects of the skilled interpreter's quest." <u>Id.</u> at 34 (citing Frederick J. de Sloovère, <u>Textual Interpretation of Statutes</u>, 11 N.Y.U. L.Q. Rev. 538, 541 (1934)). I now turn to

the issue of statutory interpretation at the heart of this appeal and, in analyzing it, employ this methodology.

## II

¶49 Wisconsin Stat. § 146.83(3f)(a) explains that, with certain exceptions, "if a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees under par. (b), the health care provider shall provide the person making the request copies of the requested records." Wis. Stat. § 146.83(3f)(a). Wisconsin Stat. § 146.83(3f)(b), in turn, establishes the "applicable fees," including, as relevant here, the following two fees: (1) "If the requester is not the patient or a person authorized by the patient, for certification of copies, a single $8 charge"; and (2) "If the requester is not the patient or a person authorized by the patient, a single retrieval fee of $20 for all copies requested." Wis. Stat. § 146.83(3f)(b)4.-5. (emphases added). In this case, Carolyn Moya's ("Moya") personal injury attorney obtained written consent from Moya to receive copies of her health care records. Moya claims her attorney is therefore a "person authorized by the patient" and thus exempt from these fees.

¶50 "Person authorized by the patient" is defined in Wis. Stat. § 146.81(5) as follows:

> [T]he parent, guardian, or legal custodian of a minor patient, as defined in s. 48.02(8) and (11), the person vested with supervision of the child under s. 938.183 or 938.34(4d), (4h), (4m), or (4n), the guardian of a patient adjudicated incompetent in this state, the personal representative, spouse, or domestic partner under ch. 770 of a deceased patient,

7

> any person authorized in writing by the patient or a
> health care agent designated by the patient as a
> principal under ch. 155 if the patient has been found
> to be incapacitated under s. 155.05(2), except as
> limited by the power of attorney for health care
> instrument. If no spouse or domestic partner survives
> a deceased patient, "person authorized by the patient"
> also means an adult member of the deceased patient's
> immediate family, as defined in s. 632.895(1)(d). A
> court may appoint a temporary guardian for a patient
> believed incompetent to consent to the release of
> records under this section as the person authorized by
> the patient to decide upon the release of records, if
> no guardian has been appointed for the patient.

§ 146.81(5) (emphasis added).

¶51 Moya and the court rely on the emphasized text for their conclusion that Moya's attorney fits the definition of "person authorized by the patient." At the outset, it should be noted that it is not clear whether the phrase "any person authorized in writing by the patient" in Wis. Stat. § 146.81(5) is a standalone category or whether it is connected to the following phrase, namely "or a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05(2)." § 146.81(5). Healthport contends that this court need not resolve this issue, and I agree. As I will demonstrate, whether read as constituting its own category or read in conjunction with the phrase that follows it, the phrase "any person authorized in writing by the patient" does not include Moya's attorney.

¶52 More generally, it is apparent that the mention of lawyers is completely absent from this statutory definition and, instead, the categories of individuals in the statute have the commonality of those people who can legally act and make

8

decisions when the patient cannot; that is not what a personal injury lawyer does. Lawyers are not like the other categories of individuals listed. While lawyers may advocate on behalf of their clients, they are ultimately subject to their clients' direction. The categories of individuals in Wis. Stat. § 146.81(5), on the other hand, are composed of individuals who stand in the shoes of a patient and make decisions for the patient, but are not those who simply advocate for a client at the client's direction.

### III

¶53 Also important is a recognition that, as noted by Healthport, the definition of "person authorized by the patient" provided in Wis. Stat. § 146.81(5) does not clearly define the nature of the "authori[ty]" provided by the patient to the person authorized by the patient. The circuit court determined that, for purposes of Wis. Stat. § 146.83(3f)(b), the authority was the authority to inspect a patient's health care records. Moya, 366 Wis. 2d 541, ¶4. The court of appeals concluded that the authority was the authority to consent to the release of a patient's health care records. Id., ¶16.

¶54 Review of Wis. Stat. § 146.81(5) makes apparent that the definition of "person authorized by the patient" provided therein has a common focus on categories of people who are authorized by law to act as the patient, not just act because the patient vested them with limited authority to obtain records. Those included in the statutory definition include those such as "the parent . . . of a minor patient," for

9

instance, or "the guardian of a patient adjudicated incompetent in this state," but the statute does not explicitly describe what type of authority these people possess. § 146.81(5). The kind of authority vested by law in these people is far different than the kind of obligations a lawyer takes on in representing a person in a lawsuit. These people listed are those who could sign a release that would authorize the lawyer to get the records. The lawyer, unlike those listed in § 146.81(5), could not, for example, sign the form on behalf of the patient as all these individuals could do.

¶55 These observations are relevant to the plain meaning of "any person authorized in writing by the patient" in Wis. Stat. § 146.81(5). A person who states "I have been authorized in writing" has said nothing about <u>what</u> she has been authorized to <u>do</u>. For example, a person who has been authorized in writing to speak on a patient's behalf is technically a "person authorized in writing by the patient," <u>see</u> § 146.81(5), but no one would argue that this type of person would fulfill the definition of "person authorized by the patient" in Wis. Stat. § 146.83(3f)(b). Those listed in the statute, however, have in common, for example, the authority vested in them by law. In sum, examination of the phrase "any person authorized in writing by the patient" in § 146.81(5) in isolation is not sufficient to decide this case.

¶56 The court defines the nature of the authority in Wis. Stat. § 146.81(5) differently depending on in which portion of

10

chapter 146 that phrase is used.[2] So because, in the context of Wis. Stat. § 146.83(3f), the "person [potentially] authorized by the patient" is "request[ing] copies of a patient's health care records," § 146.83(3f)(a), the definition of "person authorized by the patient" in that portion of the statutes, in the court's view, is "person authorized by the patient to obtain the patient's healthcare records" (as long as, pursuant to § 146.81(5), that authorization is written authorization). But any person who obtains records this way would need written authorization.

¶57 In other words, the court simply concludes that because Moya's attorney was "authorized in writing" to receive copies of Moya's health care records, he is a "[p]erson authorized by the patient" as defined in Wis. Stat. § 146.81(5), which definition applies to the fee portion of the statutory scheme, Wis. Stat. § 146.83(3f)(b). See § 146.81. That interpretation possesses the benefit of being uncomplicated, but that does not mean it is correct. The court's reading fails to account for a number of important considerations—namely, significant clues provided by investigation of the statutory

---

[2] Typically, the "[p]resumption of consistent usage" canon would instruct that "[a] word or phrase is presumed to bear the same meaning throughout a text." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 170 (2012). In the court's defense, however, it may not be necessarily in violation of that canon because the nature of the authority, while changing, changes to attend to the purpose of the specific statute.

11

context and the application of canons of construction—which counsel a different reading of the statute.

¶58 More specifically, the court's conclusion falls prey to a criticism directed at Moya by Healthport:

> Although [Moya] repeatedly urges this Court to follow the "plain language" or "plain meaning" of the statutory words, she fails to provide a reason why her proposed interpretation follows from those words. Instead, [Moya] simply assumes that the legislature meant to say "any person authorized in writing by the patient <u>to obtain that patient's health care records</u>." A plain language argument that simply assumes the addition of a critical clause is not a plain language argument at all.

¶59 The truth of the matter is that the statutory phrase "any person authorized in writing by the patient," <u>viewed alone</u>, simply does not provide enough information for the court to reach a conclusion in this case. But statutory interpretation requires more than simply looking at a set of words in total isolation. The court must look to something more—the context of the phrase and applicable canons of constructions—to reach the correct answer.

¶60 Before discussing how these tools help establish the plain meaning of this phrase in this statute, I explain how these tools immediately demonstrate a number of significant deficits in the <u>court's</u> approach. First, the phrase "person authorized by the patient" must require more in the context of Wis. Stat. § 146.83(3f) than the court says it does because, with a few exceptions, "a person request[ing] copies of a patient's health care records" under that provision must <u>additionally</u> "provide[] informed consent" in order to obtain the

12

records. § 146.83(3f)(a). Informed consent under the statute "means written consent to the disclosure of information from patient health care records to an individual, agency, or organization that includes" specified pieces of information such as the patient's name and the signature of the patient or the person authorized by the patient. Wis. Stat. § 146.81(2). Therefore, under the court's interpretation, nearly _every_ person who obtains health care records under § 146.83(3f) will, by nature of the informed consent they must provide, automatically be a "person authorized by the patient" and thus, virtually no one will ever pay certification or retrieval fees as called for by the statute.

¶61 If the court were correct and all one needed to become a "person authorized by the patient" was informed consent, then there would be no need for a statutory definition of "person authorized by the patient." A person possessing informed consent and a "person authorized by the patient" must therefore be very different individuals possessing different degrees of authority. See, e.g., Pawlowski v. Am. Family Mut. Ins. Co., 2009 WI 105, ¶22, 322 Wis. 2d 21, 777 N.W.2d 67 ("As a basic rule of statutory construction, we endeavor to give each statutory word independent meaning so that no word is redundant or superfluous. When the legislature chooses to use two different words, we generally consider each separately and presume that different words have different meanings."). The reason that both informed consent _and separate_ authorization are required in this statutory scheme is because the individuals

13

exempted from the statutory fees at issue are either patients or those who are essentially the equivalents of patients. The legislature defined "person authorized by the patient" to mean individuals that could actually step in and make decisions for the patient. In contrast, lawyers are advocates but they do not step in and become the decision-maker; in fact, it is unethical for them to do so.

¶62 The legislature does not enact a fee statute to collect no fees. While this seems obvious, I need not look to legislative history or some unknown possible intent; I need only look at the words of the statute. And this is where context and canons of construction provide guidance. It is a "well-established canon[] of statutory construction" that "[s]tatutory interpretations that render provisions meaningless should be avoided." Belding v. Demoulin, 2014 WI 8, ¶17, 352 Wis. 2d 359, 843 N.W.2d 373; see also, e.g., United States v. Tohono O'Odham Nation, 563 U.S. 307, 315 (2011) ("Courts should not render statutes nugatory through construction."); Louisville Water Co. v. Clark, 143 U.S. 1, 12 (1892) ("Any other interpretation of the act . . . would render it inoperative for the purposes for which, manifestly, it was enacted."); Kalal, 271 Wis. 2d 633, ¶46 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage."). The court's approach virtually guts the

possibility of collecting fees and certainly contravenes fairly basic canons of construction.[3]

¶63 Another flaw in the court's reading of the relevant statutes is that the language of Wis. Stat. § 146.81(5) does not mention lawyers at all but lawyers are exempted in other sections. "Under the doctrine of expressio unius est exclusio alterius, 'the express mention of one matter excludes other similar matters [that are] not mentioned.'" FAS, LLC v. Town of Bass Lake, 2007 WI 73, ¶27, 301 Wis. 2d 321, 733 N.W.2d 287 (alteration in original) (quoting Perra v. Menomonee Mut. Ins. Co., 2000 WI App 215, ¶12, 239 Wis. 2d 26, 619 N.W.2d 123). The legislature was fully capable of adding lawyers to the

_____

[3] It is true that Wis. Stat. § 146.82(2) contains a list of entities that may obtain health care records without informed consent under certain circumstances, such as (generally speaking) emergency medical services personnel assisting a patient, district attorneys prosecuting alleged child abuse, and courts conducting termination of parental rights proceedings. See § 146.82(2)(a)2., 11.-11m. I do not find compelling the argument that the certification and retrieval fees in Wis. Stat. § 146.83(3f)(b)4.-5. are reserved for this specialized subset of requesters. If the legislature had intended such a result, it could have provided for it much more clearly.

Further, it may well be that these entities share common characteristics of which the court is not, at this time, fully aware. For instance, many of the entities listed in this group seem to possess a public interest component, such that a fee for health care records would ultimately be transferred to the taxpayer. Other entities in this group would seemingly include health care providers themselves using health care records for internal matters. See, e.g., Wis. Stat. § 146.82(2)(a)3. (exception provided "[t]o the extent that the records are needed for billing, collection or payment of claims.").

definition of "person authorized by the patient," but it did not do so.

¶64  A third problem with the court's interpretation stems from the language of the legislature's 2014 enactment of 2013 Wisconsin Act 342, which in turn created Wis. Stat. § 146.83(1b).  Importantly, this statute further defined those who are exempt from payment.  Section § 146.83(1b) provides:

> Notwithstanding s. 146.81(5), in this section, a "person authorized by the patient" includes an attorney appointed to represent the patient under s. 977.08 [a section in the chapter pertaining to the State Public Defender] if that attorney has written informed consent from the patient to view and obtain copies of the records.

§ 146.83(1b) (emphasis added).  "Notwithstanding" the definition of "person authorized by the patient" means "in spite of" the definition of "person authorized by the patient." Notwithstanding, Black's Law Dictionary 1231 (10th ed. 2014) (emphasis added).  It would be strange indeed for the legislature to have used the word "notwithstanding" if, as is suggested by the court's opinion, these attorneys already met the definition of "person authorized by the patient" in Wis. Stat. § 146.81(5) prior to the enactment of § 146.83(1b).  Put differently, the legislature's recent amendment strongly indicates that individuals like Moya's attorney are not included in the definition of "person authorized by the patient."  If lawyers who received authorization in writing were included in § 146.81(5), § 146.83(1b) would be surplusage and completely unnecessary.

16

¶65 The amendment in Wis. Stat. § 146.83(1b) provides similar guidance when viewed in light of any of a number of canons of construction. One such canon has already been referenced: "Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." Kalal, 271 Wis. 2d 633, ¶46. As Healthport points out, "[i]f the definition of 'person authorized by the patient' already included attorneys with an informed consent, the new section 146.83(1b) would be wholly superfluous." Indeed it would.

¶66 Again, "[u]nder the doctrine of expressio unius est exclusio alterius, 'the express mention of one matter excludes other similar matters [that are] not mentioned.'" FAS, LLC, 301 Wis. 2d 321, ¶27 (alteration in original) (quoting Perra, 239 Wis. 2d 26, ¶12). That is, the legislature obviously could have expanded the reach of Wis. Stat. § 146.83(1b) to include personal injury attorneys, but it did not do so. Similarly, "[n]othing is to be added to what the text states or reasonably implies (casus omissus pro omisso habendus est). That is, a matter not covered is to be treated as not covered." Scalia & Garner, supra, at 93 (describing this as the "Omitted-Case Canon"). Under this principle, a judge should not, among other things "elaborate unprovided-for exceptions to a text." Id.; see also id. ("[I]f the Congress [had] intended to provide additional exceptions, it would have done so in clear language." (alterations in original) (quoting Petteys v. Butler, 367 F.2d 528, 538 (8th Cir. 1966) (Blackmun, J., dissenting))). This is exactly what the court may be read to do in concluding that

17

Moya's attorney is exempt from the fees at issue. This court should not be acting where the legislature has declined to do so.

¶67 Accordingly, the court's interpretation of Wis. Stat. § 146.83(3f)(b) possesses substantial flaws, and I cannot agree with it. Fortunately, it is not the only interpretation presented in this case. Again, it is important to recognize that Wis. Stat. § 146.81(5) does not clearly define the nature of the "authori[ty]" provided by the patient to the person chosen by the patient; the statute instead lists categories of individuals. In order to determine the nature of this authority, then, it is again beneficial to look to context and to apply recognized canons of construction.

¶68 Two related canons of construction, noscitur a sociis and ejusdem generis, are particularly helpful here. Pursuant to the noscitur a sociis canon of construction, "[a]n unclear statutory term should be understood in the same sense as the words immediately surrounding or coupled with it." State v. Quintana, 2008 WI 33, ¶35, 308 Wis. 2d 615, 748 N.W.2d 447 (quoting Wis. Citizens Concerned for Cranes & Doves v. DNR, 2004 WI 40, ¶40, 270 Wis. 2d 318, 677 N.W.2d 612). That is, it is reasonable to ascertain the meaning of the phrase "person authorized by the patient" by analyzing the phrase in light of the surrounding categories enumerated in the definition. See Moya, 366 Wis. 2d 541, ¶12; see also Kalal, 271 Wis. 2d 633, ¶46 ("Context is important to meaning.").

18

¶69 As explained, none of the enumerated categories in Wis. Stat. § 146.81(5) consists of attorneys. Further, the phrase "any person authorized in writing by the patient" is placed in the middle of the list rather than at its end; therefore, it does not seem to be an expansion of the categories previously listed to new categories of people, nor does it seem to be an extension of the previously listed categories to include a host of new categories. See, e.g., State v. Givens, 28 Wis. 2d 109, 115, 135 N.W.2d 780 (1965) ("When the statute, after the specific enumerations, in a 'catchall' clause proscribes 'otherwise disorderly conduct' which tends to 'provoke a disturbance,' this must mean conduct of a type not previously enumerated but similar thereto in having a tendency to disrupt good order and to provoke a disturbance.").

¶70 In fact, if I consult the noscitur a sociis canon of construction, it depends upon whether the enumerated persons in Wis. Stat. § 146.81(5) possess a "similar meaning." Quintana, 308 Wis. 2d 615, ¶35. If the various categories are unrelated, then one would presume that the individual categories should be interpreted broadly. See id. Conversely, if the various categories are related, then the "authori[ty]" provided by the patient to the person chosen by the patient in § 146.81(5) should be understood in light of the characteristics shared by each category. See id. As was previously discussed, the categories of individuals listed have in common the fact that they become decision-makers for the patient. Thus, we further

19

conclude that the phrase "person authorized by the patient" is not to be construed as expansive.

¶71 Additionally, a related canon of construction, ejusdem generis, "instructs that when general words follow specific words in the statutory text, the general words should be construed in light of the specific words listed" such that "the general word or phrase will encompass only things of the same type as those specific words listed." Id., ¶27 (citing Adams Outdoor Advert., Ltd. v. City of Madison, 2006 WI 104, ¶62 n.15, 294 Wis. 2d 441, 717 N.W.2d 803). But if "[t]he specific terms listed in the statute have no common feature or class from which one could ascertain an intention to restrict the meaning of the general term," then "the general terms should be interpreted broadly to give effect to the legislature's intent." Id., ¶¶26, 28, 31-32; see also Scalia & Garner, supra, at 101 (under the "General-Terms Canon," "[g]eneral terms are to be given their general meaning (generalia verba sunt generaliter intelligenda)," so long as there is no "indication to the contrary"). So again, because the categories of individuals have in common the fact that they become decision-makers for the patient, the words are not expansive.

¶72 Consequently, it is important to ascertain whether there are similarities between the categories of individuals listed in Wis. Stat. § 146.81(5). If there are similarities, this would indicate that the "authori[ty]" granted in § 146.81(5) should be interpreted more narrowly and more exclusively; if there are no similarities, then this

20

"authori[ty]" should be interpreted more broadly and less exclusively.

¶73 Wisconsin Stat. § 146.81(5) defines "[p]erson authorized by the patient" to include individuals acting on behalf of: (1) minor patients; (2) patients who have been adjudicated incompetent; (3) deceased patients; and (4) incapacitated patients. § 146.81(5). One might argue that the legislature envisioned a certain commonality among these categories of individuals. And indeed, the court of appeals, comparing Moya and her personal injury attorney to these other pairs of individuals, interpreted "authorized" in the phrase "person authorized by the patient" to mean "having the power <u>to consent to the release</u> of the patient's records," rather than merely the power to receive those records. <u>Moya</u>, 366 Wis. 2d 541, ¶16 (emphasis added); <u>see also</u> § 146.81(5) ("A court may appoint a temporary guardian for a patient believed incompetent to consent to the release of records under this section <u>as the person authorized by the patient to decide upon the release of records</u>, if no guardian has been appointed for the patient." (emphasis added)). The court of appeals concluded that adoption of Moya's argument would violate the manifest purpose of the relevant statutes, expanding the definition of "person authorized by the patient" beyond the "very specific list of individuals" contemplated by the legislature. <u>See</u> <u>Moya</u>, 366 Wis. 2d 541, ¶12.

¶74 The interpretation of the court of appeals is reasonable. It better comports with the other enumerated

21

categories of persons in Wis. Stat. § 146.81(5). It possesses none of the major defects of the court's interpretation which I identified above. And it is supported by the statutory context and by canons of construction. And this holds true whether "any person authorized in writing by the patient" is read as a standalone category or together with the following clause. If read as a standalone category, "any person authorized in writing by the patient" would clearly not be intended as a broad, "catch-all" group, because it would not fall at the end of the list of enumerated categories; and if read together with the following clause ("or a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05(2)," § 146.81(5)), then "any person authorized in writing by the patient" would share the characteristics of the other enumerated categories and would not be intended to include attorneys. These canons certainly point strongly in one direction: against the reading adopted by the court.

¶75 The court does not adequately address the reading dictated by application of the interpretative methodology discussed above; as a result, its reasoning is unpersuasive. It also does not explain why Wis. Stat. § 146.83(1b) would be necessary to exempt public defenders from the payment of these fees because public defenders, as virtually all others, would need written authorization to obtain the patient's records in the first instance. The court adopts a more expansive interpretation, but seems to base its interpretation on language

22

that does not have support in common tools of construction. In my view, little or nothing in the statutory text supports the court's expansive view.

¶76 On balance, I must conclude that the interpretation adopted by the court today is unlikely to be the correct answer. If the statute at issue is really as broad as the court says it is, the challenged fee requirements are rendered largely meaningless. I cannot accept that a plain meaning here was intended to exempt virtually all who obtain records from payment of the fees set forth.

¶77 The clear purpose of the statute, as "gathered . . . from the text itself," is to charge certain individuals fees. Scalia & Garner, <u>supra</u>, at 33. Very simply stated, since nearly anyone who wishes to receive a patient's records needs that patient's authorization and no such authorized person would ever need to pay the applicable fee, virtually no fees would be paid under this statute. It is not as though an attorney, appropriately authorized, could never fit the definition of "person authorized by the patient." But every attorney does not fit that definition, and an examination of the text reveals that Moya's attorney does not fit that definition.

¶78 Finally, given the competing interpretative possibilities here, a point about judicial restraint is appropriate. Even if it intuitively makes sense that personal injury lawyers should not have to pay fees to receive their clients' medical records, if I am incorrect, the legislature could easily amend the statute as it did with Wis. Stat.

23

§ 146.83(1b) thereby excluding the public defenders. The legislative "fix," if the court is incorrect, requires a virtual rewrite of these fee statutes.

IV

¶79 Interpretation of the statutory text leads me to conclude, like the court of appeals, that Moya's personal injury attorney is not a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b). Regardless, it would be well worth the legislature's time for it to clarify these statutes so as to provide guidance to the public, to lawyers, and to the courts. In the absence of such guidance, however, I must respectfully dissent.

¶80 For the foregoing reasons, I respectfully dissent.

24

STATE OF WISCONSIN
MILWAUKEE COUNTY        SS.

        I, the undersigned Clerk of the Court of
Milwaukee County, Wisconsin do hereby certify that
I have compared this document with the original on
file and that the same is a full, true and correct copy
of said original and of the whole thereof, as the same
remains of record in my office.
IN TESTIMONY WHEREOF I have hereunto set my
hand and affixed the seal of said court,

this_____        MAR 0 1 2018

JOHN BARRETT
Clerk of Circuit Court